In the Matter of the Estate of JOHN CALLAHAN, Deceased. MARY A. McGUIRE, Executrix, Appellant; LOUISA LEACH, Respondent.

1. EXECUTORS AND ADMINISTRATORS — CLAIMS AGAINST ESTATE.  The mere silence on the part of an executor or administrator after the presentation of a claim under the statute against the decedent's estate, accompanied by lapse of time, will not in any case preclude the representative from thereafter contesting its validity.

2. JURISDICTION OF SURROGATE — DISPUTED CLAIMS.  When a claim against the estate is disputed in the account of an executor or administrator, the mere fact that he had maintained silence in respect thereto since its presentation, does not render the claim an established one so as to give the surrogate jurisdiction to decree its payment on settlement of the representative's account, under section 2743 of the Code of Civil Procedure as it stood in 1894.

*Matter of Callahan,* 87 Hun, 210, reversed.

(Argued March 16, 1897; decided March 23, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the first judicial department, entered June 27, 1895, which affirmed a decree of the Surrogate's Court of New York county, made December 3, 1894, on the final settlement of the account of the executrix of John Callahan, deceased, which, among other things, directed the payment of the claim of one Louisa Leach against his estate.

John Callahan died April 13, 1889, leaving a will whereby he gave his entire estate to Mary A. McGuire, whom he

appointed sole executrix, and to whom letters testamentary were issued May 24th, 1889. Prior to his death, and on December 4th, 1888, he bid off at public auction a house and lot in the city of New York, belonging to Louisa Leach, for the sum of $17,200. By the terms of sale ten per cent of the purchase money was to be paid on the day of sale and the balance on the 4th day of January, 1889, when the deed was to be given. The purchaser was to have a good title, free and clear of all incumbrance. The purchaser Callahan paid the ten per cent to the auctioneer as required by the terms of sale, but refused to complete his purchase. The premises were then resold for account of Callahan, January 30th, 1890, for $16,400, and the claim in question was for the difference betwen the sum for which the premises were sold to Callahan and the price obtained on the resale. The claimant brought an action against Callahan in his lifetime to recover this difference, but he having died before trial, the executrix was substituted as defendant in his place, and she put in a verified answer denying the liability of Callahan, and subsequently the plaintiff discontinued the action. The claimant immediately thereafter brought an action against the auctioneers to recover the sum of $1,720 paid by Callahan to them at the time of the purchase. The defendants answered denying the right of the plaintiff to recover the sum claimed, and alleging failure on the part of the plaintiff to perform her contract. This action was brought to trial and the complaint was dismissed. Thereafter, on the 20th day of April, 1891, Louisa Leach, the plaintiff in the actions mentioned, caused to be served on the executrix of Callahan a verified claim for the loss alleged to have been sustained by her from the refusal of Callahan to complete his purchase at the auction sale, giving the particulars substantially as heretofore stated, and stating the amount of such loss at $870.70. The executrix took no notice of the claim and had no conversation with the claimant on the subject, but remained passive and silent, neither disputing nor rejecting the claim, or on the other hand admitting it; unless her silence can be considered as an admission. In February, 1892, the claimant

presented to the surrogate a petition duly verified, alleging that
she was a creditor of the decedent, the circumstances out of
which her claim arose, the granting of letters testamentary;
that more than eighteen months had elapsed since they were
granted, and that the executrix had filed no account, and pray-
ing that a citation be issued to the executrix, requiring her to
show cause " why she should not render and settle her account
as executrix of John Callahan, deceased." The petition did
not ask for the payment of the claim of the petitioner. The
surrogate issued a citation pursuant to the prayer of the peti-
tion, and on the return day the executrix filed a verified
answer, in which she stated that " there is nothing due to the
petitioner herein by the said estate, for the following reasons,
viz.," and the answer then proceeds to state the reasons in
paragraphs, separately numbered. Among other things, the
answer alleges the sale of the house and lot at auction, and
that it was described by metes and bounds; the purchase by
Callahan; that by the terms of sale the petitioner was to con-
vey the premises as advertised and sold, " free, clear and dis-
charged of and from any lien or liens;" that the title in its
entirety and as sold was not free and clear, and that for that
reason Callahan refused to take the conveyance. The answer
further set forth the suit brought against Callahan in his life-
time " for the same cause of action as is alleged by the peti-
tioner herein;" that the action was terminated by a judgment
for the defendants on the merits. It alleges that the peti-
tioner on the 20th day of April, 1891, served her claim on the
executrix, and that it was rejected by her, and that more than
six months having elapsed subsequent to such rejection, the
claim was barred.

The surrogate, on the 14th day of April, 1892, upon the
hearing of the petition, made an order requiring the execu-
trix to file an account. The executrix, in pursuance of the
order, filed her account duly verified, in which, among other
things, she stated that the only claim against the estate of the
decedent at his death was the claim of the petitioner, " which
claim I have always and do still dispute." The petitioner

filed objections to the account on the ground, among others, that "it fails to state that the petitioner's claim is now due and payable from the estate." The surrogate referred the account and the objections to a referee "to inquire into the jurisdictional facts" and to examine and report. The referee reported, among other things, that the "said claim of Louisa Leach has been established against the estate of said decedent and should be paid to the said Louisa Leach." The report was confirmed by the surrogate and a decree was made finally settling the accounts of the executrix, and adjudging, among other things, that the executrix pay to the petitioner her claim, amounting to $870.70, with interest from January 4, 1889, and the sum of $270.16 for her costs on the accounting. The executrix appealed from the decree to the General Term, where it was affirmed, and from such affirmance appeals to this court.

*Thomas J. McKee* and *Daniel G. Rollins* for appellant. The authority of a surrogate to direct the payment of a claim in a decree settling an account is limited to claims that are not disputed or that have been established. (*McNulty* v. *Hurd*, 72 N. Y. 520; *Bevan* v. *Cooper*, 72 N. Y. 317; *Tucker* v. *Tucker*, 4 Keyes, 136; *Curtis* v. *Stilwell*, 32 Barb. 354; *Schutz* v. *Morette*, 81 Hun, 518; *Titus* v. *Poole*, 145 N. Y. 414.)

*William W. Niles, Jr.*, for respondent. The executrix was bound to take some action upon the claim when a verified copy of it was duly served upon her, and it was her duty either to reject it or offer to refer it without delay. (*Lambert* v. *Craft*, 98 N. Y. 349.) The executrix was familiar with the nature of the claim, as she had been substituted as defendant in the action in the Court of Common Pleas in the place of John Callahan, deceased, and as the claimant was aware of this fact, she had a right to suppose that the executrix had admitted her claim by failing to reject it, and to rely upon the implied promise to pay it, and having done so, the

executrix is now estopped from coming into court after the
claim is barred by the statute and denying its validity.
(*Nicoll* v. *Burke*, 13 J. & S. 526; *Trustees* v. *Smith*, 118 N.
Y. 641; *Thompson* v. *Simpson*, 128 N. Y. 289.) On the set-
tlement of the account the surrogate had the power to allow
all debts against the estate which were not disputed or had
been established. (Code Civ. Pro. § 2743.) This claim had
been established against the estate. (*Lambert* v. *Craft*, 98 N.
Y. 349.) The claim was not disputed. (*Lambert* v. *Craft*,
98 N. Y. 342.)

ANDREWS, Ch. J. The sole question on this appeal relates
to the jurisdiction of the surrogate to adjudge, on the account-
ing of the executrix of John Callahan, the payment of the
claim of Louisa Leach out of the estate. The claim was based
upon his refusal to complete his purchase of the house and lot
No. 681 Eleventh avenue in the city of New York, made at
public auction on the 4th day of December, 1889. The direc-
tion for the payment of the claim is contained in the decree
of the surrogate, made on the final settlement of the accounts
of the executrix. The power and duty of a surrogate to
adjudge the payment of debts of the decedent, on the settle-
ment of the accounts of an executor or administrator, is defined
in section 2743 of the Code of Civil Procedure. It was pro-
vided in that section, as it stood when the decree was rendered,
as follows: "Where the validity of a debt, claim or distribu-
tive share is not disputed, or has been established, the decree
must determine to whom it is payable, the sum to be paid by
reason thereof, and all other questions concerning the same."
It is only where a claim is not disputed, or has become estab-
lished so as to preclude a denial of its validity, that the juris-
diction of a surrogate to decree its payment attaches. The
statute incorporates the rule, which had been settled by numer-
ous decisions, that the power of a Surrogate's Court did not
extend to the trial or determination of disputed claims against
the estate of a decedent. (*McNulty* v. *Hurd*, 72 N. Y. 520,
and cases cited.) In this case the executrix, in her account,

disputed the claim in question in explicit language. The surrogate, therefore, had no jurisdiction to proceed and adjudge its payment, unless the claim had become an established liability, so that it was no longer open to dispute or contest. The decree of the surrogate proceeded upon the ground that the claim had become indisputable. The only fact upon which the surrogate relied to support this conclusion was that after the claim was presented to the executrix on the 20th day of April, 1891, she made no sign, neither rejecting nor expressly admitting it, but maintained an absolute silence in respect to it for the period of nine months, and up to the time when, upon the application of the claimant, she was cited to render an account. The silence of the executrix for so long a period was regarded as an admission of the justice of the claim, which she could not afterwards dispute. Her silence was, in view of the circumstances, much more consistent with an intention to disregard the claim, than to admit it. She had defended the suit brought for its enforcement, and in her verified answer had denied its validity. That action was discontinued by the plaintiff and was followed by another brought against the auctioneers to recover the ten per cent of the purchase money paid to them by the testator on the sale, and which (as is inferable) was defended in the interest of the executrix. The claimant having failed to secure payment of her claim in these litigations, then presented her claim to the executrix and served the notice of April 20th, 1891. It is very difficult to believe that the subsequent silence of the executrix was referable to an intention on her part to abandon her resistance to the claim, which had been in active litigation for years. The decree in this case is an example of the danger to which estates of decedents may be subjected, if the silence of an executor or an administrator, after presentation of a claim and the lapse of a reasonable time, concludes the representative from contesting its validity.

As between parties acting in their own right, the delivery by a creditor to a debtor of a claim in favor of the former, followed by the silence of the latter, may, under circumstances,

establish an account stated.　But the admission implied from silence in that case constitutes *prima facie* evidence only of the correctness of the claim.　The burden of proof may be changed, but it is still open to the debtor to contest its validity. (*Lockwood* v. *Thorne*, 18 N. Y. 285.)　The surrogate applied as against the executrix a much more stringent rule, and held her concluded by her silence.　We had occasion to consider this general subject in the case of *Schutz* v. *Morette* (146 N. Y. 137), and we are of opinion that mere silence on the part of an executor or administrator after the presentation of a claim under the statute, accompanied by lapse of time, will not in any case preclude the representative from thereafter contesting its validity.　If the claim is not rejected, and on an accounting no objection is taken to its allowance, then the surrogate would be authorized to treat it as an admitted claim and direct its payment.　But the claim does not become established from mere silence of the executor or administrator.

It is insisted that the executrix, in her answer to the petition of the claimant for a citation requiring the executrix to render an account, did not in direct terms deny the claim of the petitioner.　We think there was a substantial denial in the answer that the petitioner had any valid claim against the estate.　It certainly was not admitted, and the direct denial on the accounting of the existence of a claim raised in due time the jurisdictional question.

Our conclusion is that the part of the decree of the surrogate which directed the payment of the claim in question, and awarded costs to the claimant, was erroneous.

The judgment of the General Term and the decree of the surrogate should be reversed, with costs to the appellant, and the case remitted to the Surrogate's Court, with directions to suspend the entry of any decree in the accounting proceeding ordering the payment of the claim of the petitioner, until she shall have established it before a competent tribunal.

All concur, except MARTIN, J., absent.

Judgment reversed.