In the Matter of the Estate of ANNIE AGELOFF, Deceased.

Surrogate's Court, Kings County, December 15, 1936.

*Abraham L. Pomerantz* [*Abraham L. Marcus* of counsel], for Joseph Maslow, as executor-petitioner accountant.

*C. Elmer Spedick* [*Gerard A. Cartier* of counsel], for the respondent-objectant Title Guarantee and Trust Company.

WINGATE, S. It appears that on January 31, 1931, the present claim in the sum of $129,000 was filed with the executor of this estate and thereafter retained by him without express approval or disapproval until June 2, 1936, when, incidental to this voluntary accounting proceeding, it was rejected. The claim is predicated upon an alleged written guaranty of payment executed by decedent on May 28, 1929. Upon the hearing the court found that the purported signature of decedent appearing upon the instrument was in fact a forgery. Claimant urged, however, that the executor by reason of his delay in rejecting the present claim had thereby become estopped to deny its validity. The injury complained of by claimant as a result of this unusual delay in the rejection of its claim was the loss of the testimony of a Sadie Jaffe, whose name appears upon the paper *sub judice* as a witness and who, it is asserted, cannot now be located.

As preliminary to the main issue it is to be noted that the Court of Appeals has ruled " that mere silence on the part of an executor or administrator after the presentation of a claim under the statute, accompanied by lapse of time, will not in any case preclude the representative from thereafter contesting its validity." (*Matter of Callahan*, 152 N. Y. 320, at p. 326.) The theory of this rule is expounded in *Schutz* v. *Morette* (146 N. Y. 137, at p. 142) and discussed by the respective courts in *Coombs* v. *Joerg* (125 App. Div. 615); *Matter of Jacobs* (109 id. 293) and *Matter of Brown* (76 id. 185).

The Appellate Division, First Department, has explained the doctrine of estoppel through laches as follows: " ' Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' (Quotation from *Chase* v. *Chase*, 20 R. I. 202, per STINESS, J.) " (*Seligson* v. *Weiss*, 222 App. Div. 634, 638.)

That there has been undue delay in bringing the present issues to bar is uncontrovertible; but that the delay or resultant disadvantage to the claimant is attributable solely or mainly to the

executor is not the fact. The delay has been on the part of both parties. Claimant was free from the moment of the presentation of its claim to the executor to prosecute the same to conclusion in a court of general jurisdiction, or, in the alternative, to require an accounting in this court upon the termination of the statutory period of administration now long past, in which latter proceeding the validity of the claim could have been decided. It did neither, but sat complacently by until, as it would now complain, the passage of time had " worked a disadvantage " to it in that, it is now stated, a desired witness is unavailable. Claimant complains of an inertia that was its own, for which the executor may not be penalized or held responsible. The possibility of relief was continuous, and equally available to both parties. There is no " negligence on one side and injury therefrom on the other " in this cause. Negligence and injury, if any, appear on the same side. Decisions based upon situations wherein the right to initiate litigation rests solely upon the party sought to be estopped, are not in point.

The relief sought is one in equity. Equity requires that he who would invoke its aid must himself be diligent.

Assuming, in argument only, that the circumstances here disclosed did give rise to certain equities on the part of claimant, no estoppel through laches has been established for no injury through such delay has been proved. Although the claimant's complaint is the absence of Sadie Jaffe, there is nothing before the court to indicate that the delay herein has been the cause of claimant's inability to produce her. Whether the delay in this case has operated to the actual prejudice of claimant, and, if so, to what extent, remain matters of speculation and conjecture. There is no proof in the case that any person by the name of Sadie Jaffe ever existed. In view of the foregoing, and, further, of the finding by this court that the purported signature of the decedent upon the alleged instrument of guaranty was a forgery, there is no inference, as contended by claimant, that Sadie Jaffe, if existent and if available to it, would have testified contrary to the facts as found by the court. On the contrary, the inference to be drawn herein is that no such person as the alleged witness ever existed. Finally, assuming all things favorable to claimant, there is no way of estimating, under the circumstances of this case, the effect of any such unknown testimony upon the court.

Cases involving the Statute of Limitations arising under prior statutes and at times when there existed in the Surrogate's Court no jurisdiction to try contested claims are without application to the present situation. (*Matter of Whitcher*, 230 App. Div. 239.)

The claim is disallowed. Proceed accordingly.